automatic reversal of the conviction. See Appendix D at 18 ("The criminal trial court's failure to inquire into the conflict requires automatic reversal"). In Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Court did establish "an automatic reversal rule." Mickens, 535 U.S. at 168, 122 S.Ct. at 1241-42. That rule, however, applies "only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." Id. Such is not the situation in the instant case. Moreover, in Mickens, the Court rejected the prisoner's argument that "where the trial judge neglects a duty to inquire into a potential conflict, the defendant, to obtain reversal of the judgment, need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance." Id. at 170, 1243. In so doing, it explained that a "rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the Sullivan-mandated inquiry, makes little policy sense." Mickens, 535 U.S. at 172, 122 S.Ct. at 1244.

In this case, the petitioner has not demonstrated that an actual conflict of interest adversely affected his attorney's performance. Thus, even if the trial court did not completely fulfill its duty to inquire into the alleged conflict, reversal is not required. For these reasons, the Connecticut Appellate Court's decision is not contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, the claim must fail.

### C. The Petitioner Was Not Denied The Effective Assistance Of Counsel At His 1993 Criminal Trial

As his second claim, the petitioner alleges that he was denied the effective assistance of counsel at his criminal trial. Specifically, he claims that trial counsel provided inadequate assistance by virtue of (1) counsel's inadequate cross-examination of a witness regarding the paper bag and rubber bands, (2) counsel's failure to request jury instructions regarding non-exclusive possession, (3) counsel's failure to object to the charge on consciousness of guilt, (4) counsel's failure to preserve this claim for direct appeal, and (5) counsel's improper advice regarding the guilty plea. Ruling and Order [Doc. # 41] at 3. For the reasons discussed below, the petitioner's claim is without merit. Therefore, he is not entitled to habeas corpus relief.

#### 1. The Strickland standard

There are two components to a claim of ineffective assistance of counsel. A habeas petitioner alleging ineffectiveness must demonstrate: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In deciding whether a petitioner has satisfied the first prong of Strickland, courts must decide whether counsel's performance fell below the reasonable competence exhibited by lawyers with ordinary training and skill in criminal law. In other words, the question is whether counsel's acts or omissions were "outside the wide range of professionally competent assistance" or failed to meet "prevailing professional norms." Strickland, 446 U.S. at 690, 104 S.Ct. at

2066. Flawlessness is not required. The right to counsel is the right to effective assistance and not the right to perfect representation.

To satisfy the "prejudice" requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In other words, when a petitioner challenges his conviction on the ground of ineffective assistance of counsel, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

### 2. The petitioner's counsel was not ineffective in cross-examining a police detective

First, the petitioner alleges that his counsel's cross-examination of a witness regarding the paper bag and rubber bands was inadequate. Specifically, he asserts that [m]y attorney elicited from a state's witness on cross examination that opened the door for the witness to connect an unidentified bag to me as well as to other testimony where the state's witness connected me to drugs found in an apartment which I was not in." Second Amended Petition [Doc. # 38] at 8. The Connecticut Appellate Court resolved the petitioner's claim, as follows:

> At trial, the state called Detective Thomas Trochio of the New Haven police department in its case-in-chief. Trochio testified that, while conducting surveillance at 265 Dixwell Avenue, he saw the petitioner enter that building carrying a brown paper bag and that, when the petitioner exited the building, he no longer had the bag. The police subsequently entered the building, specifically, the apartment of the petitioner's brother within, and discovered

19

a large amount of what was later determined to be cocaine and heroin. The drugs were in a brown paper bag bearing a McDonald's restaurant logo.

On cross-examination, the petitioner's counsel questioned Trochio about the specifics of the brown paper bag. In answering, Trochio testified that the bag he saw the petitioner carrying looked similar to the bag in which the drugs were found. Particularly, he testified that both bags had color on them.[5] On redirect examination, Trochio added that the bags appeared to be the same size. Similarly, in response to another question from the petitioner's counsel, Trochio testified that rubber bands found at 265 Dixwell Avenue were of a similar type to those found at 377 Shelton Avenue, where the petitioner lived and was arrested. The petitioner claims that those questions evidence his counsel's ineffectiveness because they had the effect of causing the jury to draw a connection between the petitioner and the drugs found at his brother's residence. We are not convinced.

We think it clear that the state, in its direct examination of Trochio, elicited testimony implying that the witness saw a similarity between the bag held by the petitioner and the bag found at 265 Dixwell Avenue and, additionally, between the two sets of rubber bands. We note that it is likely that the jurors, presumably competent individuals, already appreciated the connections the state intended to draw between the various items before the petitioner's counsel began questioning the witness. Any reinforcement of the idea

---

[5] "The testimony at issue was as follows:

'Q. And when you say that [the petitioner] had a brown bag with him when you saw him both instances that day?

'A. Yes, sir.

'Q. You weren't able to identify it being the same bag that you found up there, were you?

'A. It appeared similar, yes, sir.

'Q. You couldn't see 'McDonald's'?

'A. I saw some color. It was not a brown plain bag, there was something on it; I couldn't make out what it was.' "

Goodrum II, 63 Conn. App. at 302 n.1.

20

> brought out on cross-examination was minimal or cumulative at best. Further, as we concluded in the petitioner's direct appeal, there was ample additional evidence before the jury that connected the petitioner to the drugs he was found to have possessed.
>
> The petitioner, therefore, has failed to show that the challenged line of questioning by his counsel prejudiced him in any way. Further, in that Trochio's answer also conveyed that he was unable to see the McDonald's logo on the bag carried by the petitioner, the testimony arguably was favorable to the petitioner. Keeping in mind that our standard of review requires us to indulge a "strong presumption" that counsel's questions were shaped by reasonable professional judgment, without the "distorting effects of hindsight," they easily could be considered "sound trial strategy." (Internal quotation marks omitted.) Minnifield v. Commissioner of Correction, supra, 62 Conn. App. at 71-72, 767 A.2d 1262. As such, we cannot say that they amounted to ineffective assistance of counsel. We agree, therefore, with the court's judgment that the petitioner, in making his claim, failed to satisfy either prong of Strickland.

Goodrum II, 63 Conn. App. at 301-03.

As shown, the Connecticut Appellate Court resolved the petitioner's claim by determining that counsel's cross-examination of Detective Trochio could be considered within the realm of reasonable professional judgment and that no prejudice resulted. Obviously, counsel was attempting to demonstrate that the detective could not positively identify the bag he saw the petitioner carrying to be the McDonald's bag found in the apartment at 265 Dixwell Avenue. That this tactic, arguably, may not have succeeded as well as he had hoped does not mean that it was not a reasonable course of action. In reviewing counsel's conduct, one must "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. This is because it is "all too easy for a court, examining counsel's defense after it

21

has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. See Hogue v. Scott, 874 F. Supp. 1486, 1541 (N. D. Tex. 1994) ("Cross-examination is an art that requires instant judgment decisions; and, no two attorneys would do it alike. A habeas attorney, twelve years after the fact, is not in a position to dictate what should have been done by way of cross-examination during the heat of trial"), aff'd, 131 F.3d 466 (1997). For these reasons, the Connecticut Appellate Court's decision that counsel's questions "could be considered 'sound trial strategy'" is neither contrary to, nor an unreasonable application of, the U.S. Supreme Court's decision in Strickland. As a result, the petitioner cannot prevail on his claim.

### 3. The petitioner's counsel was not ineffective in failing to request a particular jury instruction

Next, the petitioner alleges that his counsel was ineffective because he failed to request a jury instruction that specifically informed jurors that "[w]here the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Citation omitted; internal quotation marks omitted.) Goodrum II, 63 Conn. App. at 304. The petitioner asserts that his attorney "failed to request a jury instruction that supported my defense at trial and the Appellate Court would NOT review my claim because my attorney DID NOT request it." Second Amended Petition [Doc. # 38] at 8.

In his direct appeal to the Connecticut Appellate Court, the petitioner alleged that "the trial court's charge was incorrect because it failed to instruct the jury that if the

22

defendant was not in exclusive possession of the premises that there must be additional incriminating statements or circumstances buttressing the inference of possession." Goodrum I, 39 Conn. App. at 542. Because this claim had not been preserved, he requested that the court review it under State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989). Under Golding, a defendant can raise an unpreserved claim on appeal and can prevail on that claim if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. The first two conditions of Golding are determinations of whether a defendant's claim will be reviewed, the third condition involves a review of the merits of the claim itself. State v. Bouier, 44 Conn. App. 548, 553 n.2, 690 A.2d 889, cert. denied, 241 Conn. 903, 694 A.2d 40 (1997); State v. Rose, 41 Conn. App. 701, 706, cert. denied, 239 Conn. 906, 682 A.2d 1011 (1996). The Appellate Court decided the petitioner's claim under the third-prong of Golding. Therefore, it reviewed the claim on its merits.

Subsequently, in a state habeas proceeding, the petitioner asserted that his attorney erred in failing to request the instruction. The Connecticut Appellate Court resolved the petitioner's allegation, as follows:

> The petitioner also claims that his counsel was ineffective in failing to request a jury instruction on exclusive possession of the drugs at issue pursuant to State v. Alfonso, 195 Conn. 624, 490 A.2d 75 (1985). We disagree.

23

The drugs that the petitioner was convicted of possessing were not found on his person. As a consequence, the state had to establish at trial that he constructively possessed the drugs. Further, the drugs were found in a location to which both the petitioner and other people had access. Our Supreme Court in Alfonso "established the principle that a jury may not infer possession of illegal drugs solely from a person's presence on premises where drugs are found, if the person is not in exclusive possession of such premises." State v. Nesmith, 220 Conn. 628, 635, 600 A.2d 780 (1991). "Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' " State v. Alfonso, supra, 195 Conn. at 633, 490 A.2d 75. The petitioner claims ineffectiveness in his counsel's failure to request a jury charge explaining that principle.

We addressed that issue in the petitioner's direct appeal within the framework of State v. Golding, 213 Conn. 233, 239-40, 567 A.2d 823 (1989), because the issue was unpreserved at trial. We held that the third prong of Golding was unsatisfied because "[t]he trial court gave a thorough definition of the terms 'possession' and 'constructive possession,' " and "properly informed the jurors that they could not find that the defendant possessed the narcotic substance unless they concluded that he 'knew of its presence, and that he exercised dominion and control over it.' " State v. Goodrum, supra, 39 Conn. App. at 542, 665 A.2d 159. We further held that the charge overall "gave the jury 'a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present.' " Id.

Had the petitioner's counsel requested the exclusive possession charge and the court refused to give it, we would have employed the well settled standard of review on direct appeal to assess whether the charge that was given was adequate. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . [this court] will not view the instructions as improper." (Internal quotation marks omitted.) State v. Corbin, 61 Conn. App. 496, 507, 765 A.2d 14 (2001).

24

"In reviewing the charge as a whole, the instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance. . . . The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., at 507-508, 765 A.2d 14. "[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) State v. Valinski, 254 Conn. 107, 119-20, 756 A.2d 1250 (2000).

If we had more explicitly applied the previously discussed standard to the charge given to the jury in this case, we would have arrived at the same result. Because, as we found in the petitioner's direct appeal, there was ample additional testimonial and circumstantial evidence connecting him to the drugs, it is not reasonably possible that the jury found the element of possession satisfied solely because the petitioner had been present at the location where the drugs were found. The petitioner has not demonstrated that injustice resulted from the lack of an exclusive possession charge and that he was, consequently, prejudiced by his counsel's failure to request the desired charge.

We agree, therefore, with the court that the petitioner did not receive ineffective assistance of counsel because of the failure of counsel to request a specific charge on exclusive possession of the drugs at issue.

(Footnotes omitted.) Goodrum II, 63 Conn. App. at 303-06.

Thus, the Connecticut Appellate Court decided the petitioner's claim by determining that no prejudice resulted from counsel's failure to request this particular jury instruction. In deciding a claim of ineffectiveness, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." Strickland, 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. Here, the petitioner

25

could not demonstrate prejudice. Therefore, it is easier and more appropriate to dispose of his claim by finding that no prejudice resulted from the alleged error of counsel.

The relevant instruction would have prohibited the jury from inferring possession absent exclusive control of the premises at which the drugs were found.[6] The trial court did not instruct the jury using the precise language of Alfonso. Nevertheless, it gave the jury "a thorough definition of the terms 'possession' and 'constructive possession,'" and "properly informed the jurors that they could not find that the defendant possessed the narcotic substance unless they concluded that he 'knew of its presence, and that he exercised dominion and control over it.'" Goodrum II, 63 Conn. App. at 305; Goodrum I, 39 Conn. App. at 542. Because the jury was properly charged, the petitioner cannot demonstrate that, but for counsel's alleged error, there is a reasonable possibility that the result of the criminal trial would have been different.

As a result, the Connecticut Appellate Court's decision is not that contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, the petitioner's claim must fail.

### 4. The petitioner's counsel was not ineffective in failing to object to the Secondino instruction

---

[6] In Alfonso, the Connecticut Supreme Court "'established the principle that a jury may not infer possession of illegal drugs solely from a person's presence on premises where drugs are found, if the person is not in exclusive possession of such premises.' . . . 'Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.'" State v. Alfonso, supra, 195 Conn. at 633, 490 A.2d 75." Goodrum II, 63 Conn. App. at 304.

26

The petitioner next claims that his counsel was ineffective because he did not object to the trial court's decision to give a Secondino instruction. Under Secondino v. New Haven Gas Co., 147 Conn. 672, 165 A.2d 598 (1960), in certain circumstances, the trier of fact is allowed to draw an adverse inference from a party's failure to produce a witness or witnesses. After the petitioner's 1993 criminal trial, the Connecticut Supreme Court abandoned the missing witness doctrine of Secondino in State v. Malave, 250 Conn. 722, 737 A.2d 442 (1999). Because the trial court properly instructed the jury, counsel's failure to object did not constitute deficient performance and the petitioner cannot obtain relief on his claim. In resolving the petitioner's claim, the Connecticut Appellate Court determined that:

> The petitioner claims that his counsel was ineffective in failing to except to the court's giving of a Secondino charge. At trial, the petitioner's counsel introduced evidence that suggested that the petitioner, at the time he was being watched by the police, was at 265 Dixwell Avenue to visit his son, rather than at his brother's apartment where the drugs were found. The petitioner's son apparently lived in a different unit within the same building. It was determined at the close of evidence that the petitioner's son had been present in the courtroom during the trial. The petitioner's counsel, however, declined to call him as a witness. As a result, the state requested and the court agreed to give a Secondino charge. The petitioner's counsel did not except to that charge. Accordingly, in the petitioner's direct appeal, we limited our review of whether the charge was improper to a search for plain error and found that none existed.
>
> The habeas court held that had the issue been properly preserved and considered by this court in the petitioner's direct appeal, it would not have resulted in a reversal of the judgment of conviction. In other words, the petitioner failed to show that he suffered prejudice as a result of his counsel's actions, as required under the second prong of Strickland. We agree with the habeas court.
>
> The prerequisites to the giving of a Secondino instruction are twofold. First, it must be shown that the party who declined to call the witness was in fact

27

able to procure that witness' physical presence in court, i.e., the witness was available. Second, under the facts of the case, it must be shown that the witness was one whom that party naturally would be expected to have testify. State v. Wood, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988); 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed.1988) § 65(b). Here, the parties do not dispute that the petitioner's son was present in court and, therefore, was available to testify. Further, insofar as the petitioner was claiming that he had been at 265 Dixwell Avenue to visit his son and had not been at his brother's apartment where the drugs were seized, it naturally was expected that he would have called his son to the witness stand to verify the visit. The court's instruction, therefore, was proper and would have been upheld on appeal had the petitioner's counsel taken exception to it.

Goodrum II, 63 Conn. App. at 306-08.

As the Connecticut Appellate Court explained, the trial court's decision to give a Secondino instruction was proper and "would have been upheld on appeal had the petitioner's counsel taken exception to it."[7] Goodrum II, 63 Conn. App. at 308. Counsel's failure to raise a meritless objection does not constitute deficient performance. Likewise, because the instruction was proper, no prejudice could result. For these reasons, the decision of the Connecticut Appellate Court rejecting the petitioner's claim is not contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, the petitioner's claim must fail.

### 5. The petitioner's counsel was not ineffective in failing to object to the consciousness of guilt instruction

---

[7] The underlying issue of whether the instruction was proper is a matter of state evidentiary law. The U.S. Supreme Court will "accept as binding" a state court's interpretation of state law, except in unusual circumstances. Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). Indeed, the Court "repeatedly has held that state courts are the ultimate expositors of state law. . . ." (Citations omitted.) Id.

28

The petitioner claims that his counsel was ineffective because he did not object to the trial court's instruction on consciousness of guilt. Because the trial court did not err in giving the instruction, the petitioner cannot establish that he was denied the effective assistance of counsel. The failure of counsel to object to a proper instruction does not constitute deficient performance. Likewise, because the jury was properly instructed, no prejudice can result from counsel's failure to object. The Connecticut Appellate Court resolved the petitioner's claim under the prejudice prong of Strickland.

> The petitioner also claims error in his counsel's failure to except to the court's charge to the jury on consciousness of guilt. . . . When the petitioner was arrested, he had $307 on his person. The police asked him how much money he had, and the petitioner stated that it was only $30 or $40. At trial, the state introduced testimony regarding that exchange. The court gave the jury an instruction on consciousness of guilt, directing the jurors as to how they might interpret the petitioner's false statement. As part of the charge, the court used the phrase, "guilty connection," a phrase that the petitioner claims would have been reversible error had he preserved it for appellate review.
>
> The habeas court held that had the issue properly been preserved and considered by this court in the petitioner's direct appeal, it would not have resulted in a reversal of the judgment of conviction. As with the Secondino charge, the petitioner failed to show that he suffered prejudice as a result of his counsel's failure to except to the charge. We agree with the habeas court.
>
> The petitioner cites no case law in support of the proposition that the court's use of the phrase "guilty connection" in a consciousness of guilt instruction is an error mandating automatic reversal of a judgment of conviction. In fact, our Supreme Court in State v. Francis, 228 Conn. 118, 635 A.2d 762 (1993), rejected that very claim. After stating the well established principle that jury instructions are to be considered in their entirety rather than be critically dissected, the court in Francis held that "the instruction as a whole identified a permissive inference of consciousness of guilt that the jury might draw from the defendant's false statement, an item of circumstantial evidence," rather than a forced conclusion. (Internal quotation marks omitted.) Id., at 133,

29

635 A.2d 762; see also State v. Adams, 225 Conn. 270, 289, 623 A.2d 42 (1993).

Here, as in Francis, the court's charge was otherwise "thorough and proper." State v. Francis, supra, 228 Conn. at 133, 635 A.2d 762. As with the instruction challenged in Adams, "the language 'guilty connection' did not mandate that the jury find that the facts about which the defendant had made the false statements were conclusively established. Rather, the instruction as a whole identified a permissive inference of consciousness of guilt that the jury might draw from the defendant's false statement, an item of circumstantial evidence." State v. Adams, supra, 225 Conn. at 289, 623 A.2d 42. The petitioner makes no attempt to distinguish those cases and to show how his claim would have fared differently on appeal. We therefore agree with the habeas court that the petitioner has failed to show that he was prejudiced by his counsel's failure to take exception to the trial court's consciousness of guilt charge.

Goodrum II, 63 Conn. App. at 308-10.

"The full text of the court's charge on consciousness of guilt was as follows:

'There is also another legal principle that applies in this case, I'm not sure it was referred to in argument, called consciousness of guilt. Certain conduct of a person may be considered by you to show a guilty knowledge or consciousness of guilt. When a person is on trial for a criminal offense it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal offense which may fairly have been influenced by that act. The state here claims that the [petitioner], Mr. Goodrum, made certain statements to the police on January 9th, 1992, at the time he was arrested concerning the amount of money on his person. I believe the evidence was from the police officer that [the petitioner] told the police officer he had thirty or forty dollars in his pocket, and when he was arrested and searched it turned out he had over three hundred dollars. The state claims that his statements to the police were false. Now, if you find that the [petitioner] did make false statements to the police, *you may find that such statements tend to show a guilty connection by the [petitioner] with the crimes charged.* In other words, any statements made by the [petitioner] subsequent to the alleged criminal act, which are shown to be false, you may fairly infer guilty knowledge influenced by the criminal act itself. Such statements when shown to be false are circumstantial evidence of guilty conscience and have independent probative force. But remember, it's up to you as judges of the facts to decide whether these statements or conduct on

30

the part of the [petitioner] were, first of all, false, and, second, whether they reflect consciousness of guilt.' (Emphasis added.)"

Goodrum II, 63 Conn. App. at 309 n.7.

Thus, the Connecticut Appellate Court's found that the instruction was proper and that no prejudice resulted from counsel's failure to raise an objection.[8] Its decision was neither contrary to, nor an unreasonable application of, clearly established federal law. For this reason, the petitioner is not entitled to relief on this claim of ineffectiveness.

### 6. The petitioner's counsel was not ineffective in advising him about a plea agreement

Finally, the petitioner alleges that his counsel was ineffective because he advised the petitioner to plead guilty to a charge of possessing marijuana "and told [him] it would NOT be held against [him] and then it was at Trial." Petition at p.8. The Connecticut Appellate Court resolved the petitioner's claim under the prejudice prong of Strickland. As shown below, its decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

> The petitioner next claims that he was denied effective assistance when his counsel advised him to plead guilty before trial to the count of possession of marijuana in violation of § 21a-279(c), with the understanding that the marijuana would not be introduced into evidence at trial. Further, he claims counsel was ineffective for failing to state the basis of his objection when the marijuana subsequently was introduced into evidence. We disagree.

---

[8] Like the previous claim, the underlying issue of whether the consciousness of guilt instruction was proper is a matter of state evidentiary law. The U.S. Supreme Court will "accept as binding" a state court's interpretation of state law, except in unusual circumstance. Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). Indeed, the Court "repeatedly has held that state courts are the ultimate expositors of state law. . . ." (Citations omitted.) Id.

31

When searching the residence at 377 Shelton Avenue, where the petitioner was arrested, the police found more than $1550, a jacket similar to one the petitioner was seen wearing earlier in the day at 265 Dixwell Avenue, six packets of marijuana, and a tray containing marijuana residue and seeds. State v. Goodrum, supra, 39 Conn. App. at 530, 665 A.2d 159. Before trial on the charges of which he was convicted, the petitioner agreed to plead guilty to possession of marijuana. When accepting his plea of guilty on the marijuana charge, the court canvassed the petitioner and advised him of the consequences of the plea, including that it could, subsequently, be admitted into evidence against him. The petitioner, in response, indicated that he understood. At trial, the marijuana was admitted into evidence without the petitioner's counsel objecting.[9] The petitioner now claims that he agreed to the plea on the incompetent advice of counsel. Particularly, he complains that the seized marijuana was introduced into evidence at his trial when he believed that, because of the plea, it would not be introduced. He argues that the admission of the marijuana changed the outcome of his trial.[10] We disagree.

To prevail on his claim, the petitioner must demonstrate prejudice. He must show that he would not have pleaded guilty on the marijuana charge but for the advice of counsel, that the evidence of the seized marijuana would have been ruled inadmissible at trial but for counsel's actions and that the admission of the evidence changed the outcome of the trial. That he has not done.

First, the petitioner cannot show that, but for his counsel's assurance that the marijuana would be inadmissible at trial, he would not have agreed to the guilty plea on the marijuana charge. That is because the court, when accepting the plea, clearly conveyed to him the fact that evidence of his guilty plea could be admitted at trial.

---

[9] "More accurately, the petitioner's counsel failed to object on a particular ground. He did raise a general objection, which the court overruled." Goodrum II, 63 Conn. App. at 311 n.8.

[10] "The sentences that the petitioner received for possession of marijuana and the resulting violation of his probation are to run concurrently to the sentence he received for violating General Statutes§ 21a-278 (b). As such, the petitioner does not argue that he received additional prison time because of counsel's advice on the plea." Goodrum II, 63 Conn. App. at 311 n.9.

32

> Second, even if the petitioner's counsel had raised a specific objection, the evidence regarding his possession of the marijuana still would have been admissible at trial. Evidence of other misconduct, as a general rule, is not admissible to show that a criminal defendant likely is guilty of the charges for which he is being tried. State v. Ramsundar, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S.Ct. 348, 98 L.Ed.2d 374 (1987). Such evidence, "however, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity." (Emphasis in original; internal quotation marks omitted.) Id. "Such evidence is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." Id. Here, the trial court properly allowed the state to introduce evidence of the marijuana to establish that the petitioner intended to run a drug operation from 265 Dixwell Avenue and 377 Shelton Avenue.[11]
>
> Last, as we held in the petitioner's direct appeal, much other evidence was introduced at trial to prove the petitioner's guilt, including the testimony of police and the petitioner's brother, and the petitioner's connections to various items seized at 265 Dixwell Avenue. Therefore, we cannot say that the marijuana was a decisive factor in the verdict.
>
> The evidence concerning the marijuana likely would have been admissible irrespective of whether the petitioner had pleaded not guilty or whether a proper objection had been advanced. Additionally, even if it were not admitted, there remained ample other evidence to support the petitioner's conviction of possession of a narcotic substance with intent to sell. Therefore, the court correctly determined that the petitioner failed to show that he suffered prejudice as a result of his counsel's actions, as required by the second prong of Strickland.

Goodrum II, 63 Conn. App. at 310-13.

On March 18, 1993, just before the trial commenced, "the petitioner pleaded guilty to possession of marijuana and received a one year sentence of incarceration." Appendix C at 22. The charge stemmed from the police seizure of marijuana found at the petitioner's

---

[11] "If the petitioner had not pleaded guilty to the marijuana charge, he would have been tried on that charge as well. In that case, the marijuana evidence surely would have been admitted." Goodrum II, 63 Conn. App. at 312 n.10.

33

home at 377 Shelton Avenue. The court that accepted the petitioner's plea "clearly conveyed to him the fact that evidence of his guilty plea could be admitted at trial." Goodrum II, 63 Conn. App. at 312. Thus, any misadvice that the petitioner received from his attorney was corrected by the court. Moreover, the petitioner had the option of pleading guilty to the marijuana charge or having the same jury that heard the other charges against him also decide his guilt on the possession of marijuana charge. Had he refused to plead guilty, evidence of the marijuana certainly would have been admitted at trial to prove the petitioner's guilt as to that charge. Thus, had he continued to plead not guilty, evidence that marijuana was found at the petitioner's home properly could be admitted "to establish that the petitioner intended to run a drug operation from 265 Dixwell Avenue and 377 Shelton Avenue"; Goodrum II, 63 Conn. App. at 312; and, it also would be used as evidence of his guilt to the charge of possession of marijuana.

For these reasons, the petitioner failed to demonstrate that prejudice resulted from his attorney's advice to plead guilty to the charge of possession of marijuana. As a result, the Connecticut Appellate Court's decision on this issue was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the petitioner's claim is without merit and habeas relief must be denied.

## IV. CONCLUSION

For the reasons set forth above, the respondent respectfully requests that this Court dismiss the petition attacking the petitioner's 1993 state conviction.

Respectfully submitted,

RESPONDENT--COMMISSIONER OF CORRECTION

By: _____
JO ANNE SULIK
Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (facsimile)
Fed. Bar. No. ct 15122

**CERTIFICATION**

I hereby certify that a copy of this document was mailed to Stanley Goodrum, Inmate No. 127765, Gates Correctional Institution, 131 N. Bridebrook Road, Niantic, Connecticut 06357, on May 7, 2004.

_____
JO ANNE SULIK
Assistant State's Attorney

35