UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STANLEY GOODRUM,              :
        Petitioner,           :
                              :              PRISONER
      v.                      :  CASE NO. 3:02cv235 (AWT)
                              :
COMMISSIONER OF CORRECTION,   :
        Respondent.           :


RULING ON SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Stanley Goodrum ("Goodrum"), currently
confined at the J.B. Gates Correctional Institution in Niantic,
Connecticut, brings this action for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  He challenges his conviction on
charges of possession of narcotics with intent to sell by a non-
drug-dependent person, possession of marijuana and violation of
probation.  For the reasons set forth below, the second amended
petition is being denied.

I.   Procedural Background

In May 1993, Goodrum pled guilty to charges of possession of
marijuana.  Thereafter, he was tried before a jury on charges of
possession of narcotics with intent to sell by a non-drug-
dependent person, conspiracy to sell narcotics, possession of
marijuana and multiple counts of violation of probation.  Goodrum
was convicted and sentenced to a total effective term of

imprisonment of 25, execution suspended after 18 years, followed by 5 years of probation.  On direct appeal, the Connecticut Appellate Court reversed the conviction for conspiracy to sell narcotics and affirmed the conviction on all other charges.  See State v. Goodrum, 39 Conn. App. 526, 529, 665 A.2d 159, 161, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995) ("Goodrum I").

In June 1994, Goodrum filed a petition for writ of habeas corpus in state court.  Appointed counsel amended the petition in 1996.  Following an evidentiary hearing in early November 1996, the state court denied the petition.  (See Resp't's Answer Ex. C at 22-32.)  Judgment entered on November 22, 1996.  (See Resp't's Answer Ex. C at 22.)  Although Goodrum was granted certification to appeal the denial, he did not file his appeal until January 16, 1997.  (See Resp't's Answer Ex. C at 33-34, 38-39.)  The Connecticut Appellate Court dismissed the appeal as untimely filed and, on June 18, 1997, denied Goodrum's motion for leave to file a late appeal.  (See Resp't's Answer Ex. C at 36.)

In September 1997, Goodrum filed a second state habeas petition seeking restoration of his right to appeal.  The parties entered a stipulation granting the second petition and affording Goodrum 20 days to appeal the denial of his first state habeas petition.  (See Resp't's Answer Ex. C at 36-37, 35.)

On May 8, 2001, the Connecticut Appellate Court affirmed the state court's denial of Goodrum's first habeas petition.  See

Goodrum v. Commissioner of Correction, 63 Conn. App. 297, 776 A.2d 461 (2001) ("Goodrum II").  On September 13, 2001, the Connecticut Supreme Court denied Goodrum's petition for certification to appeal.  See Goodrum v. Commissioner of Correction, 258 Conn. 902, 782 A.2d 136 (2001).

Goodrum commenced this action, filed pursuant to 28 U.S.C. §2254, by petition signed December 27, 2001, and received by the court on February 7, 2002.  In his second amended petition, Goodrum asserts three claims: (1) that his trial counsel had a conflict of interest, (2) ineffective assistance of trial counsel and (3) actual innocence.  The respondent filed a motion to dismiss on the ground that Goodrum had not exhausted his state court remedies with regard to all grounds for relief. Subsequently, Goodrum withdrew the third ground for relief, and the court determined that Goodrum had exhausted his state court remedies with respect to the first two grounds for relief and ordered the respondent to address these claims.

II.  Factual Background

The Connecticut Appellate Court determined that the jury could have found the following facts:

> In January, 1992, the New Haven police conducted an undercover narcotics investigation that focused on three residences:  265 Dixwell Avenue, 377 Shelton Avenue and 35 Elizabeth Street.  During the investigation, detectives saw [Goodrum] enter and exit each location and saw him use a key to enter 265 Dixwell Avenue.  On January 7,

the detectives obtained a warrant to search
all three residences.

On the morning of January 9, Detective
Thomas Trochio and Detective Hilton Wright saw
[Goodrum] leave his residence at 377 Shelton
Avenue and drive to 265 Dixwell Avenue where
[Goodrum's] brother, Moses Pipkin, and son
resided. The detectives saw [Goodrum] leave
his car and enter 265 Dixwell Avenue carrying
a brown paper bag. [Goodrum] used a key to
enter the front door of the building. The
detectives did not see which apartment
[Goodrum] entered.

The detectives returned to the police
station to assemble a team of police officers
for the purpose of executing the search
warrants. They returned to 265 Dixwell Avenue
approximately thirty minutes later, knocked on
the door to apartment A-1 and announced that
they had a search warrant. [Goodrum] was not
present. In the apartment were Pipkin and
Gloria Daniels.

The police searched the apartment and found
a brown paper bag with a McDonald's logo in
which were 200 packets containing 7.06 grams
of heroin. The packets were stamped with the
words "raising hell" and wrapped in rubber
bands. The police also recovered nineteen
packets of heroin identical to those found in
the brown paper bag, nine packets containing
approximately 1.33 grams of cocaine found on
Daniels, with the box for a beeper with
instructions, a piece of wrapping paper
addressed to [Goodrum] at 265 Dixwell Avenue,
and a Quaker Oats grits container filled with
rubber bands. Written on the top of the grits
container was "IOU Stan and Betty. 10-C 12-
P." The officers arrested Pipkin and Daniels.

The police then proceeded to 377 Shelton
Avenue to execute that portion of the warrant.
[Goodrum] and Ruth Ford were found there.
Upon searching [Goodrum], the police found a
beeper with the same serial number that was on
the instructions in the beeper box found at

265 Dixwell Avenue and keys later determined
to be for the front door to apartment A-1.
When the police asked [Goodrum] how much money
he had in his wallet, he said, "$30 or $40."
A subsequent search of [Goodrum's] wallet
revealed $307, mostly $20 bills.

At the Shelton Avenue residence, the police
also found $1554.50, primarily in $1 bills,
stored in a plastic water bottle, a jacket
similar to that [Goodrum] had been seen
wearing earlier that day, six packets of
marijuana, and a tray containing marijuana
residue and seeds.

At trial, Pipkin testified that he had been
hospitalized for three weeks and had returned
to his apartment at 265 Dixwell on January 8.
Pipkin stated that he gave [Goodrum] the keys
to his apartment while he was in the hospital,
and that [Goodrum] was the only person with
keys to his apartment. He testified that the
McDonald's bag was not in his apartment when
he returned home on the evening of January 8,
or when he left the apartment early the
following morning.

Pipkin further testified that when he
returned to his apartment on January 9,
[Goodrum] was leaving the building and was not
carrying the paper bag. He denied that the
200 packets in the paper bag were his. He
stated that he first learned of that bag when
the police arrived shortly thereafter and
found it during their search. Pipkin pleaded
guilty to charges of possession of narcotics
with intent to sell and conspiracy to sell
narcotics.

Trochio testified that, in his experience
and training, a user of heroin is not likely
to be found with 200 packets of heroin. He
also testified that the packaging of the
heroin into $20 bags indicated a large scale
drug operation. Wright testified that
"P-dope" is a street term for heroin.

Goodrum I, 39 Conn. App. at 529-31, 665 A.2d at 161-62.

5

III. Standard of Review

The federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), significantly amended 28 U.S.C. §§ 2244, 2253, 2254, and 2255. The amendments "place[] a new constraint" on the ability of a federal court to grant habeas corpus relief to a state prisoner with respect to claims adjudicated on the merits in state court. Williams v. Taylor, 529 U.S. 362, 412 (2000) (taken from the portion of the opinion delivered by Justice O'Connor). The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

6

> law, as determined by the Supreme Court of the
> United States; or
>      (2) resulted in a decision that was based
> on an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme

Court "may be either a generalized standard enunciated in the

Court's case law or a bright-line rule designed to effectuate

such a standard in a particular context."  Kennaugh v. Miller,

289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law

"if the state court applies a rule different from the governing

law set forth in [Supreme Court] cases, or if it decides a case

differently than [the Supreme Court] has done on a set of

materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685,

694 (2002).  A state court decision involves an unreasonable

application of clearly established Supreme Court precedents if

the state court applies the Supreme Court's precedents to the

facts in an objectively unreasonable manner.  See Brown v.

Payton, 533 U.S. 133, 125 S. Ct. 1432, 1439 (2005).  When

considering the unreasonable application clause, the focus of the

inquiry "is on whether the state court's application of clearly

established federal law is objectively unreasonable."  Bell, 535

U.S. at 694.  The district court does not decide "whether the

state court correctly interpreted the doctrine of federal law on

which the claim is predicated, but rather whether the state

court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at any time." Brown v. Greiner, 409 F.3d 523, 533 (2d Cir. 2005); see also Bell, 535 U.S. at 694.  In both scenarios, federal law is "clearly established" if it may be found in holdings, not dicta, of the Supreme Court as of the date of the relevant state court decision. Williams, 519 U.S. at 412.

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).

Collateral review of a conviction is not merely a "rerun of the direct appeal." Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir.), cert. denied, 502 U.S. 895 (1991).  Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (citations and internal quotation marks omitted).

IV.  Discussion

The remaining grounds for relief are the trial court's failure to address adequately the issue of his counsel's conflict of interest and ineffective assistance of trial counsel with respect to the cross-examination of the witness on the paper bag and drugs; the failure to request certain jury instructions, object to others and preserve issues for appeal; and improper advice regarding the guilty plea.

A.  Conflict of Interest

In his first ground for relief, Goodrum contends that his attorney had a conflict of interest because he also represented Goodrum's "co-conspirator" in a separate action and that the trial court failed to inquire into the conflict and determine whether Goodrum was willing to waive his right to conflict-free representation.

The Connecticut Appellate Court determined that the following facts were relevant to this claim:

> At the time of his arrest, [Goodrum] was living at 377 Shelton Avenue with his girlfriend, Ford.  The police also arrested Ford and charged her with possession of a controlled substance and conspiracy to sell narcotics.  [Goodrum] and Ford retained the same counsel to represent them in their respective cases.  [Goodrum] went to trial first.  Counsel obtained continuances on Ford's case and expended no other efforts on her behalf, since he believed that the state would not pursue the charges against her.  At trial, [Goodrum] called Ford as his first witness.  The court, noticing that her

9

> attorney of record was also [Goodrum's]
> attorney, called the situation "intolerable"
> and immediately appointed a special public
> defender to represent her.

Goodrum II, 63 Conn. App. at 316, 776 A.2d at 475-76.

> When the matter of the dual representation
> by counsel of both [Goodrum] and Ford was
> brought to the trial court's attention, it
> conducted an immediate inquiry and appointed a
> special public defender to represent Ford.
> Her testimony at the hearing revealed that,
> although counsel had been retained to
> represent both Ford and [Goodrum], she in fact
> had never spoken with counsel and had been
> present only when he conversed with [Goodrum].
> Counsel had requested continuances of her case
> on her behalf and nothing more. Ford never
> discussed her case or [Goodrum's] case with
> counsel prior to the appointment of the
> special public defender to represent her. Her
> special public defender advised her not to
> testify, and the court advised her regarding
> her fifth amendment right not to incriminate
> herself. Nevertheless, she chose to testify
> and her testimony was very favorable to
> [Goodrum]. Ford's case subsequently was
> nolled.

Id. at 317-18, 776 A.2d at 476 (footnote omitted).

"A defendant's Sixth Amendment right to effective assistance

of counsel includes the right to representation by conflict-free

counsel." United States v. Schwarz, 283 F.3d 76, 90 (2d Cir.

2002)(citation omitted); accord Wood v. Georgia, 450 U.S. 261,

271 (1981) ("Where a constitutional right to counsel exists, our

Sixth Amendment cases hold that there is a correlative right to

representation that is free from conflicts of interest."). "The

mere physical presence of an attorney does not fulfill the Sixth

10

Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." Holloway v. Arkansas, 435 U.S. 475, 490 (1978).  The right to conflict-free counsel applies equally to appointed and retained counsel.  See, e.g., Cuyler v. Sullivan, 446 U.S. 335, 344 (1980).

"In the absence of a conflict of interest, a defendant claiming ineffective assistance of counsel must demonstrate that the lawyer's representation 'fell below an objective standard of reasonableness,' Strickland v. Washington, 466 U.S. 668, 687-88, . . . (1984), and that counsel's deficiency was 'prejudicial' to the defense, id. at 692, . . . ." Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005).  In Cuyler v. Sullivan, the Supreme Court set forth the standard governing an ineffective assistance of counsel claim based on an asserted conflict of interest.  The standard differs from the general ineffective assistance of counsel standard established in Strickland. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. at 348.  "[T]he Sullivan standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect.  An 'actual conflict,' for Sixth Amendment purposes, is a

11

conflict of interest that adversely affects counsel's performance." Mickens v. Taylor, 535 U.S. 162, 172 n. 5 (2002); accord id. at 171 ("we think 'an actual conflict of interest' mean[s] precisely a conflict that affected counsel's performance–as opposed to a mere theoretical division of loyalties."). A petitioner bears the burden of demonstrating a conflict of interest by a preponderance of the evidence. He cannot meet this burden "by speculative assertions of bias or prejudice." Triana v. United States, 205 F.3d 36, 40-41 (2d Cir.) (§ 2255 proceeding), cert. denied, 531 U.S. 956 (2000). But a petitioner "who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Cuyler v. Sullivan, 446 U.S. at 349-50.

Circuits differ on how a defendant may demonstrate that a conflict adversely affected counsel's performance. The Second Circuit permits a defendant to demonstrate an adverse effect by suggesting a plausible alternative strategy that was not pursued at trial because counsel's loyalties were elsewhere. See Eisemann, 401 F.3d at 107. "[T]he defendant need not show that the defense would necessarily have been successful had it been used, only that 'it possessed sufficient substance to be a viable alternative.'" United States v. Fevrer, 333 F.3d 110, 116 (2d

Cir. 2003) (quoting <u>Winkler v. Keane</u>, 7 F.3d 304, 309 (2d Cir. 1993)).

Goodrum's trial counsel also was Ford's attorney of record. When his counsel called Ford to testify, the trial court removed his counsel from Ford's case and appointed a special public defender to represent Ford.  Against the advice of the special public defender and despite cautions from the court, Ford testified.  Thus, during her testimony, Goodrum's attorney did not represent Ford and had no active conflict of interest from that time forward.

Goodrum argues that his counsel's actions prejudiced his case because Ford's testimony prevented him from raising a defense of drug-dependency.  At no time did Goodrum present any evidence that Ford could have testified that he was drug-dependent or why, if his counsel planned to present a defense of drug-dependency, she was called as a witness, given that she had never seen Goodrum using drugs.  Thus, this claim of adverse effect is mere speculation.

Goodrum also argues that his counsel did not pursue the defense and did not pursue Ford as "the bad guy" because his counsel was concerned about incriminating Ford.  The Connecticut Appellate Court found that nothing in the record supported these arguments.

The state court hearing the habeas petition also found no evidence supporting Goodrum's arguments.  The only evidence presented was that, although trial counsel represented both Goodrum and Ford, and Ford was present when his counsel spoke with Goodrum, his counsel never spoke with Ford regarding her case.  The factual findings of the state court are presumed correct, and Goodrum has not rebutted that presumption by presenting clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1).  He has provided nothing other than his own assumptions about what might have been shown.  These bald assertions are insufficient to demonstrate that he was prejudiced by trial counsel's actions.

The court concludes that Goodrum has not presented any evidence to show that trial counsel had an actual conflict which adversely affected his counsel's performance.  Therefore, the petition for writ of habeas corpus on this ground is being denied.[1]

---

[1]The respondent also argues that the Supreme Court has indicated in dicta in Mickens v. Taylor, that the general standard for ineffective assistance of counsel should be applied in this case instead of the standard set forth in Cuyler v. Sullivan.  The Second Circuit has rejected this argument.  See Tueros v. Greiner, 343 F.3d 587, 593-94 (2d Cir. 2003).  The Second Circuit noted that Mickens was decided several years after the state court conviction became final, a factor applicable in this case as well, and that the cited language is dicta, which is precluded from consideration under 28 U.S.C. § 2254.  This court follows the directions of the Second Circuit and does not address this argument further.

Goodrum's assertion that the trial court failed to inquire into the conflict and determine whether he objected to continued representation also lacks merit.  Upon learning that Goodrum's counsel also was Ford's counsel of record, the trial court remedied the situation by appointing a special public defender for Ford.  Thus, there was no continuing violation of Goodrum's right to conflict-free representation and no need for the trial court to obtain Goodrum's waiver.

B.   Ineffective Assistance of Trial Counsel

The court next considers Goodrum's contention that he was afforded ineffective assistance of counsel at trial.  The court previously has reviewed Goodrum's allegations and the grounds raised in his state habeas petition and determined that this ground for relief encompasses the following claims:  trial counsel improperly cross-examined a state's witness to elicit evidence connecting him to the paper bag and drugs; failed to request jury instructions for non-exclusive possession of the apartment where the bag and rubber bands were found; failed to object to the charge on consciousness of guilt; failed to preserve this claim for direct appeal; and improperly advised him that if he pled guilty to the possession of marijuana charge, the marijuana would not be used against him at trial.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668

15

(1984).  To prevail, Goodrum must demonstrate, first, that counsel's conduct "fell below an objective standard of reasonableness" established by prevailing professional norms and, second, that this incompetence caused prejudice to him.  Id. at 687-88.  Counsel is presumed to be competent.  Thus, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).  To satisfy the prejudice prong of the Strickland test, Goodrum must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of a trial.  Id.  When the ineffective assistance of counsel claim is premised on counsel's strategies or decisions, the petitioner must demonstrate that he was prejudiced by his counsel's conduct.  To demonstrate prejudice in the context of a guilty plea, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  That is, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. Where the petitioner claims that counsel failed to advise him of

available defenses, the "prejudice" inquiry must address
objectively whether the defense likely would be successful at
trial.  See id.  To prevail, Goodrum must demonstrate both
deficient performance and sufficient prejudice.  See Strickland,
466 U.S. at 700.  Thus, if the court finds one prong of the
standard lacking, it need not consider the remaining prong.

In their analysis, the Connecticut Superior and Appellate
Courts applied the standard established in Strickland.  Because
the state courts applied the correct legal standard, the state
court decision cannot meet the "contrary to" prong of section
2254(d)(1).  Thus, Goodrum may obtain federal habeas relief only
if the state court decisions were an unreasonable application of
that standard to the facts of this case.

The court considers below each identified example of
ineffective assistance of counsel.

### 1.   Cross-examination of Witness

Goodrum first contends that trial counsel's cross-
examination of a state's witness elicited unfavorable information
that linked Goodrum to the paper bag and drugs that were found in
his brother's apartment.

The Connecticut Appellate Court set forth the following
relevant facts:

> At trial, the state called Detective Thomas
> Trochio of the New Haven police department in
> its case-in-chief.  Trochio testified that,
> while conducting the surveillance at 265

Dixwell Avenue, he saw [Goodrum] enter that building carrying a brown paper bag and that, when [Goodrum] exited the building, he no longer had the bag.  The police subsequently entered the building, specifically, the apartment of [Goodrum's] brother within, and discovered a large amount of what was later determined to be cocaine and heroin.  The drugs were in a brown paper bag bearing a McDonald's restaurant logo.

On cross-examination, [Goodrum's] counsel questioned Trochio about the specifics of the brown paper bag.  In answering, Trochio testified that the bag he saw [Goodrum] carrying looked similar to the bag in which the drugs were found.  Particularly, he testified that both bags had color on them.[2] On redirect examination, Trochio added that the bags appeared to be the same size. Similarly, in response to another question from [Goodrum's] counsel, Trochio testified that rubber bands found at 265 Dixwell Avenue were of a similar type to those found at 377 Shelton Avenue, where [Goodrum] lived and was arrested.  [Goodrum] claims that those questions evidence his counsel's ineffectiveness because they had the effect of causing the jury to draw a connection between [Goodrum] and the drugs found at his brother's residence.

Goodrum II, 63 Conn. App. at 301-02; 776 A.2d at 467-68.

---

[2]"The testimony at issue was as follows:
"Q. And when you say that [Goodrum] had a brown bag with him when you saw him both instances that day?
"A. Yes, sir.
"Q. You weren't able to identify it as being the same bag that you found up there, were you?
"A. It appeared similar, yes, sir.
"Q. You couldn't see 'McDonald's'?
"A. I saw some color.  It was not a brown plain bag, there was something on it; I couldn't make out what it was."
Goodrum II, 63 Conn. App. at 302 n.1, 776 A.2d at 468 n.1.

In reviewing this claim the Connecticut Appellate Court determined that the state, in its direct examination of this witness, had elicited testimony suggesting similarities between the bag that Goodrum was carrying and the one found in the apartment and the rubber bands found in the two apartments. Thus, it concluded that the evidence elicited on cross-examination was, at best, cumulative.  In addition, the Connecticut Appellate Court noted that the state had presented other evidence linking Goodrum to the drugs and that, "in that Trochio's answer also conveyed that he was unable to see the McDonald's logo on the bag carried by [Goodrum], the testimony was arguably favorable to [Goodrum]." 63 Conn. App. at 303, 776 A.2d at 468.  Thus, the Connecticut Appellate Court held that Goodrum had failed to demonstrate that this questioning prejudiced his case.

After reviewing the testimony and the state appellate decision, this court concludes that the decision of the Connecticut Appellate Court was not an unreasonable application of the Strickland standard.

> 2.  Request for Jury Instruction

Goodrum next argues that his counsel was ineffective because he failed to request an instruction informing the jury that, because Goodrum did not have exclusive control over the apartment where the narcotics were found, jurors could not infer that

Goodrum knew of the presence of narcotics and had control of the narcotics unless such an inference could be supported by incriminating statements or other circumstances.  He also states that the underlying claim was not reviewed on direct appeal because his attorney did not request it.

Although unpreserved at trial, the failure to include this instruction was raised on direct appeal.  The Connecticut Appellate Court considered the claim under its standard for review of unpreserved claims, determined that no plain error existed and declined to review the claim further.  See Goodrum I, 39 Conn. App. at 541-42, 665 A.2d at 167.

In reviewing the denial of Goodrum's state habeas petition, the Connecticut Appellate Court determined that no prejudice had resulted from his counsel's failure to request the charge.  On direct appeal, the court had found that there was sufficient additional evidence, both testimonial and circumstantial, to connect Goodrum to the drugs.  Thus, on appeal of the state habeas petition, the Connecticut Appellate Court determined that "it is not reasonably possible that the jury found the element of possession satisfied solely because the petitioner had been present at the location where the drugs were found."  Goodrum II, 63 Conn. App. at 306, 776 A.2d at 470.  The court held that Goodrum failed to show that he was prejudiced by his counsel's failure to request the charge.  This court has reviewed the

decision on direct appeal summarizing the evidence against

Goodrum and concludes that the decision of the state court was

not an unreasonable application of the Supreme Court's holding in

Strickland.

    3.   <u>Objection to Jury Instruction and Failure to
Preserve Issues for Appeal</u>

Goodrum next contends that his counsel was ineffective when

he failed to object to the jury instruction regarding adverse

inferences and preserve issues for appeal on the instructions

regarding adverse inferences and consciousness of guilt.

The Connecticut Appellate Court found the following facts

relevant to instructions regarding adverse inferences:

> The petitioner claims that his counsel was
> ineffective in failing to except to the
> court's giving of a <u>Secondino</u>[3] charge.  At
> trial, the petitioner's counsel introduced
> evidence that suggested that the petitioner,
> at the time he was being watched by the
> police, was at 265 Dixwell Avenue to visit his
> son, rather than at his brother's apartment
> where the drugs were found.  The petitioner's
> son apparently lived in a different unit

---

[3] "'The failure to produce a witness for trial who is
available and whom a party would naturally be expected to call
warrants an adverse inference instruction against the party who
would be expected to call that witness.  <u>Secondino v. New Haven
Gas Co.</u>, 147 Conn. 672, 674-75, 165 A.2d 598 (1960)' <u>State v.
Santangelo</u>, 205 Conn. 578, 596, 534 A.2d 1175 (1987).  We note
that subsequent to the petitioner's criminal trial, our Supreme
Court abandoned the 'missing witness rule' of <u>Secondino</u> in
criminal cases.  <u>State v. Malave</u>, 250 Conn. 722, 738, 737 A.2d
442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct.
1195, 145 L. Ed. 2d 1099 (2000).  The petitioner does not argue
that <u>Malave</u>'s holding should apply retroactively to his case."
<u>Goodrum II</u>, 63 Conn. App. 306 n.4, 776 A.2d 470 n.4.

within the same building.  It was determined
at the close of evidence that the petitioner's
son had been present in the courtroom during
the trial.  The petitioner's counsel, however,
declined to call him as a witness.  As a
result, the state requested and the court
agreed to give a <u>Secondino</u> charge.  The
petitioner's counsel did not except to that
charge.  Accordingly, in the petitioner's
direct appeal, we limited our review of
whether the charge was improper to a search
for plain error and found that none existed.

The habeas court held that had the issue
been properly preserved and considered by this
court in the petitioner's direct appeal, it
would not have resulted in a reversal of the
judgment of conviction.  In other words, the
petitioner failed to show that he suffered
prejudice as a result of his counsel's
actions, as required under the second prong of
<u>Strickland</u>.  We agree with the habeas court.

<u>Goodrum II</u>, 63 Conn. App. at 306-07, 776 A.2d at 470-71 (one

footnote omitted).

Upon review of the reasoning of the Connecticut Appellate

Court, this court concludes that the decision was not an

unreasonable application of the <u>Strickland</u> standard.  The court

considered whether the trial court would have sustained his

counsel's objection to the charge and concluded that it would

not.  Goodrum has presented no new evidence that would cause this

court to question the state court's analysis.  Thus, Goodrum has

not shown that the decision of the Connecticut Appellate Court

was an unreasonable application of clearly established federal

law.

Goodrum also challenges the failure of his counsel to preserve this issue for appeal.  The state court determined that the instruction was proper.  Goodrum has identified no constitutional right that was violated by his counsel's failure to preserve an issue for appeal regarding the giving of proper jury instructions.  Accordingly, the court can discern no basis for a violation of Goodrum's right to effective assistance of counsel.

The Connecticut Appellate Court described the facts surrounding the consciousness of guilt instruction as follows.

> When the petitioner was arrested, he had $307 on his person.  The police asked him how much money he had, and the petitioner stated that it was only $30 or $40.  At trial, the state introduced testimony regarding that exchange. The court gave the jury an instruction on consciousness of guilt, directing the jurors as to how they might interpret the petitioner's false statement.  As part of the charge, the court used the phrase, "guilty connection," a phrase that the petitioner claims would have been reversible error had he preserved it for appellate review.

Goodrum II, 63 Conn. App. at 308-09, 776 A.2d at 471 (footnotes omitted).

After reviewing the objectionable phrase in the context of the entire charge, the state courts concluded that Goodrum had failed to show that the use of the phrase would have warranted automatic reversal of his conviction and did not demonstrate that he was prejudiced by his counsel's failure to preserve the issue

for direct appeal.  Upon review, this court concludes that the
actions of the state courts were not an unreasonable application
of federal law.

> 4.  <u>Guilty Plea</u>

Finally, Goodrum contends that he pled guilty to the
possession of marijuana charge in reliance on his counsel's
representation that the marijuana would not be introduced at
trial.

The state court rejected this claim, again pursuant to the
prejudice prong of the <u>Strickland</u> test.  The Connecticut
Appellate Court set forth the following relevant facts:

> When searching the residence at 377 Shelton
> Avenue, where the petitioner was arrested, the
> police found more than $1550, a jacket similar
> to one the petitioner was seen wearing earlier
> in the day at 265 Dixwell Avenue, six packets
> of marijuana, and a tray containing marijuana
> residue, and seeds. . . .  Before trial on the
> charges of which he was convicted, the
> petitioner agreed to plead guilty to
> possession of marijuana.  When accepting his
> plea of guilty on the marijuana charge, the
> court canvassed the petitioner and advised him
> of the consequences of the plea, including
> that it could, subsequently, be admitted into
> evidence against him.  The petitioner, in
> response, indicated that he understood.  At
> trial, the marijuana was admitted into
> evidence without the petitioner's counsel
> objecting.  The petitioner now claims that he
> agreed to the plea on the incompetent advice
> of counsel.  Particularly, he complains that
> the seized marijuana was introduced into
> evidence at his trial when he believed that,
> because of the plea, it would not be
> introduced.  He argues that the admission of

                        the marijuana changed the outcome of his the
                        trial.

Goodrum II, 63 Conn. App. at 311, 776 A.2d at 472-73 (footnote
omitted).

        The court rejected Goodrum's assertion that he would not
have pled guilty absent counsel assurances because the trial
court explained the consequences of the plea, including the fact
that the guilty plea could be introduced at trial, and Goodrum
indicated that he understood those consequences.  Thus, the court
concluded that any misinformation was corrected by the trial
court.  In addition, the Connecticut Appellate Court determined
that the marijuana was properly admitted to establish that
Goodrum intended to run a drug operation from the two apartments
and found that much other evidence was admitted to prove his
guilt.  The court concluded that, even if the marijuana evidence
were not admitted, the remaining evidence was sufficient to
support Goodrum's conviction.   Thus, the Connecticut Appellate
Court held that Goodrum failed to demonstrate prejudice as a
result of his counsel's action.  See Goodrum II, 63 Conn. App. at
312-13, 776 A.2d at 473-74.  Upon review, this court concludes
that the state court decisions are not an unreasonable
application of federal law.

        Therefore, this court concludes that the determination of
the state court, on the grounds discussed above, that Goodrum was
afforded effective assistance of trial counsel is not an

unreasonable application of federal law.  Accordingly, the second amended petition for writ of habeas corpus on this ground is being denied.

V.   Conclusion

The second amended petition for a writ of habeas corpus [**doc. #38**] is hereby **DENIED**.  Because Goodrum has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.

The Clerk is directed to enter judgment and close this case.  It is so ordered.

Dated this 12th day of May 2006, at Hartford, Connecticut.


                              _____/s/_____
                                   Alvin W. Thompson
                              United States District Judge

26